**Denise MOORE, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0504–CR–222.**

Court of Appeals of Indiana.

April 12, 2006.

Transfer Denied July 6, 2006.

John (Jack) F. Crawford, Crawford & Devane, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, for Appellee.

1. Ind.Code § 35–44–3–4.

2. Oral argument was heard in this case on March 9, 2006 in Indianapolis. We thank

## OPINION

BAKER, Judge.

Today we are faced with the tragic death of a child that was at least partially the result of the negligence of an Indiana Family and Social Services Administration (IFSSA) employee. And although the circumstances are unfortunate, negligence is not a crime in this state. Appellant-defendant Denise Moore appeals her conviction for Obstruction of Justice,[1] a class D felony. Moore raises three issues, one of which we find dispositive: whether this prosecution was brought outside of the statute of limitations. Finding that the alleged offense was completed five years and three months before the State brought charges, we reverse the judgment of the trial court.

### FACTS[2]

On March 28, 1997, Marvetta Grimes gave birth to twins, A.G. and K.G. The twins both tested positive for cocaine at birth, and they were immediately made wards of the Marion County Office of Family and Children (OFC). Moore was assigned as the case manager for the twins. The twins were placed in foster care at the home of Florence Saunders when they were three days old. Although they had developmental problems, the twins thrived with Saunders, and she decided that she wanted to adopt them. Moore had become familiar with Saunders as a foster parent, and she wanted the twins to stay with Saunders.

As Moore was preparing for Saunders to adopt the twins, Latricia Bars contacted

counsel for their excellent briefs and able presentations at oral argument.

her, claiming to be a relative of the twins.[3] IFSSA prefers placement of children for adoption with relatives, and Special Needs Adoption Program Specialist (SNAPS) Denise Halliburton told Moore that the Grimes twins would have to be considered for adoption with the Bars family.

In anticipation of that expected placement, Moore prepared an undated Adoptive Home Study. The home study document stated, "No criminal records were found in Indiana for Mr. and Mrs. Bars." State's Ex. 9, p. 406. On November 11, 1998, Moore prepared an Adoption Summary, which stated, "L.B. and Latricia Bars have had no previous contact with the Marion County Office of Family and Children." Appellant's App. p. 414. Both statements later proved to be incorrect, in that L.B. had convictions for class D felony theft and misdemeanor battery, and the Bars had previously had contact with the OFC, which substantiated abuse in the household. According to IFSSA policy, a person is prohibited from being a foster parent if the person has been convicted of any one of nineteen felonies, including battery; felony theft and misdemeanors are not included on the list. Defendant's Ex. A, p. 2140. On February 24, 1999, the Bars filed a petition to adopt the twins. On March 18, 1999, the probate court held an adoption hearing, and the probate court granted the adoption on the same day.

On January 18, 2002, the twins were taken to Riley Hospital. A.G. was severely emaciated, had bruises over his whole body, and loop cord marks on his stomach and back. A.G. died later that day from dehydration. K.G. was extremely small and emaciated, had scars and marks on her body, had no verbal skills, and was extremely possessive of food. She was diagnosed with severe failure to thrive, malnutrition, and demonstrated evidence of physical abuse and neglect. Police arrested the Bars, who were ultimately convicted of child neglect.

The OFC investigated the placement of the twins with the Bars, and on February 19, 2004, a grand jury returned an indictment charging Moore with two counts of neglect of a dependent, a class B felony, and obstruction of justice, a class D felony. On April 19, 2004, Moore filed a motion to dismiss the indictment and information based in part on the assertion that the statute of limitations had been violated. The trial court denied the motion, and affirmed that decision when Moore's counsel renewed the motion at the start of the trial. The jury trial began on January 18, 2005. On January 22, 2005, the jury acquitted Moore of the neglect of a dependent charges but found her guilty of obstruction of justice. On February 23, 2005, the trial court sentenced Moore to 545 days in the Department of Correction but suspended the entire sentence and placed Moore on probation for 545 days. Moore now appeals.

### DISCUSSION AND DECISION

■ In her appellate brief, Moore renews her argument that the statute of limitations was violated. Indiana Code section 35-41-4-2 states that a prosecution for a D felony is barred unless it is commenced within five years after the commission of the offense. Here, the indictment was filed on February 19, 2004, which means that the offense must have been completed on or after February 19, 1999, in order to be within the statute of limitations. With regard to an obstruction of justice charge, we note that the State is

---

**3.** Latricia Bars's relation to the twins is tenuous at best. Marvetta's second cousin Ester was married to a man named Harold. Latricia is Harold's adult daughter from an extramarital relationship. Therefore, there is no blood relation between Latricia and Marvetta.

not required to prove actual impairment of the investigation, and the mere potential influence with a line of inquiry is sufficient to establish materiality. *Vandivier v. State,* 822 N.E.2d 1047, 1054 n. 6 (Ind.Ct. App.2005), *trans. denied* (citing *Wilke v. State,* 496 N.E.2d 616, 618 (Ind.Ct.App. 1986)). Therefore, it is of no moment that the Adoption Summary was not placed before a court until—at the earliest—February 24, 1999, the date the adoption petition was filed. Moore completed the acts that the State alleged to be an obstruction of justice on November 11, 1998, the date that she filed the Adoption Summary. Therefore, this prosecution was brought three months after the statute of limitations had expired, and the trial court erred in denying Moore's motion to dismiss on this basis.

▆▆▆▆ We also note that the evidence is insufficient to support Moore's conviction. Specifically, there is no evidence that she possessed the requisite intent to mislead. In reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Grim v. State,* 797 N.E.2d 825, 830 (Ind.Ct. App.2003). Instead, we look to the evidence most favorable to the judgment and the reasonable inferences therefrom. *Id.* We will affirm if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* While we seldom reverse for insufficient evidence, in every case where that issue is raised on appeal, we have an affirmative duty to make certain that the proof at trial was, in fact, sufficient to support the verdict beyond a reasonable doubt. *Vandivier,* 822 N.E.2d at 1053.

In order to convict Moore of obstruction of justice, the State was required to prove that Moore made, presented, or used a false record, document, or thing with in-tent that the record, document, or thing, material to the point in question, appear in evidence in an official proceeding or investigation to mislead a public servant. I.C. § 35-44-3-4. The State alleged that Moore committed this crime when she falsely stated that there was no criminal record for L.B. and that the Bars had had no prior contact with the OFC.

We note that all the evidence demonstrates that Moore did not want to place the twins with the Bars. Instead, she wanted Saunders to adopt them, but she was told by a SNAPS, Denise Halliburton, that the twins would have to be considered for adoption placement with the Bars. Tr. p. 223, 776–77, 795, 1047, 1059–60, 1069, 1150. Surprisingly, it was the IFSSA's policy to ignore misdemeanor convictions and felony theft convictions when considering the placement of children in potential homes. Defendant's Ex. A, p. 2140. L.B.'s criminal history consisted of one felony conviction—theft—and one misdemeanor conviction. State's Ex. 34A, p. 480. Moore was a caseworker, a low-level employee within the IFSSA, who was required to follow IFSSA policies. It was not her place to disobey the policy set forth by the agency, so she followed orders in making the Adoptive Home Study that indicated no criminal history in the Bars home. And based on the policies of the IFSSA, Moore's statement in the Adoptive Home Study was not false because there was no *material* criminal history to report.

▆▆▆▆ And the State introduced no evidence that Moore knew of the Bars's previous contact with the OFC. While the State argues that we can infer that Moore knew of the previous contact from the ease with which Moore could have obtained that information, that is simply not enough to prove that she knew of the contact yet falsely reported that there was none. In fact, the State introduced evidence that the

person who actually performed the inquiries into prior OFC contact did not recall Moore ever requesting this information about the Bars. Tr. p. 542. It is entirely within the realm of possibility that Moore never requested information about prior OFC contact. This is certainly negligent conduct, and it may even be grossly negligent. But negligence in the State of Indiana is not a criminal act. *See Whitaker v. State*, 778 N.E.2d 423 (Ind.Ct.App. 2003) ("Clearly, since at least 1977 it has been public policy in the state of Indiana that automobile accident deaths caused by negligence, even gross negligence, fall outside the realm of criminal prosecution ....."). Regardless, there is not a shred of evidence that Moore actually intended to mislead a public official because there is no evidence that she knew the information to be false.

■ This case represents a tragic failure in the system that ought to have protected A.G. and K.G. from being placed in an abusive home. And while Moore was undoubtedly negligent in her handling of their case, that negligence does not amount to an obstruction of justice. Accordingly, we find that the State filed these charges outside of the statute of limitations. And even if the charges had been filed in a timely fashion, the evidence was insufficient to convict Moore of obstruction of justice.

The judgment of the trial court is reversed and remanded with instructions to vacate the judgment of conviction.

NAJAM, J., and BAILEY, J., concur.